**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SYNDICATED OFFICE SYSTEMS, INC. assignee of ST. LOUIS UNIV. HOSPITAL, and TENET HEALTH SYSTEM SL, INC., d/b/a ST. LOUIS UNIV. HOSPITAL, | ) | |
| Plaintiffs, | ) | |
| vs. | ) | Case No. 4:05CV00640 ERW |
| THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA and KFORCE, INC., | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court upon Defendant Kforce Inc.'s Motion to Dismiss and for Summary Judgment [doc. #31].

## I. BACKGROUND FACTS

Plaintiffs' First Amended Complaint alleges that, on June 5, 2000, Diane Feverston was seriously injured in an automobile accident and was admitted to St. Louis University Hospital ("Hospital") for treatment. Ms. Feverston's injuries prevented her from communicating at the time of her admission. Plaintiffs allege that, shortly after her admission, they determined that Ms. Feverston was insured by Defendant The Guardian Life Insurance Company of America ("Guardian") and learned from Guardian's representative that a "precertification number" would need to be obtained from Guardian for treatment authorization. The precertification number was provided on June 13, 2000, and various treatment authorizations were provided by Guardian throughout Ms. Feverston's stay in the Hospital. Guardian acts as a third-party administrator for a self-insured group

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

employee health benefit plan ("the Plan") maintained by Defendant Kforce, Inc. ("Kforce").[1] According to the Complaint, as a result of Guardian's representations to the Hospital that Ms. Feverston was covered by the Plan, the Hospital provided professional goods and services to Ms. Feverston valued at $580,052.76. Guardian has refused to pay the cost of these goods and services.

At the time this action was initially filed, Plaintiff Syndicated Office Systems ("Syndicated") brought three counts against Guardian for the torts of detrimental reliance, promissory estoppel, and negligent misrepresentation. Shortly thereafter, Guardian filed a Motion to Dismiss, contending that Syndicated's tort claims were preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"). In a July 5, 2005 Memorandum and Order, the Court denied Guardian's Motion to Dismiss, concluding that Syndicated's claims were not preempted by ERISA. On September 27, 2005, Plaintiffs filed their First Amended Complaint ("Complaint"), adding Tenet Health System SL, Inc., d/b/a St. Louis University Hospital as an additional Plaintiff and Kforce as an additional Defendant. The claims against Kforce are brought pursuant to a theory of vicarious liability for torts allegedly committed by its alleged agent, Guardian. Thus, the Complaint now contains Counts One, Two, and Three, which are tort claims directed against Guardian, as well as Counts Four, Five, and Six, which are vicarious liability tort claims directed against Kforce. Because Kforce alone brings the instant Motion, the Court's analysis will concern Counts Four, Five, and Six.

**II. DISCUSSION**

Kforce requests that the Court dismiss the claims against it pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, grant judgment in its favor as a matter of law with respect

---

[1]Guardian is retained and paid by Kforce to supply administrative and claims payment services for the Plan.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

to all three counts against it. Plaintiffs contend that there is no basis for dismissing their claims against Kforce and that disputed issues of material fact prevent the Court from entering judgment as a matter of law in favor of Kforce.

A. Motion to Dismiss

Kforce moves for dismissal of Counts Four, Five, and Six, arguing that Plaintiffs have failed to state claims upon which relief can be granted. Specifically, Kforce argues that: (1) these counts are preempted by ERISA and must be dismissed; (2) these counts are based on an allegation of reasonable and detrimental reliance which could not have existed; and (3) these counts fail to allege that they are brought in the name of the real party in interest. With respect to this third argument, Kforce argues in the alternative that Plaintiffs should be ordered to file a More Definite Statement so that Kforce can reasonably respond to the allegations against it.

The standards governing motions to dismiss are well-settled. A complaint shall not be dismissed for its failure to state a claim upon which relief can be granted unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of a claim entitling him or her to relief. *Breedlove v. Earthgrains Banking*, 140 F.3d 797, 799 (8th Cir. 1998) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). When deciding a motion to dismiss under Rule 12(b)(6), a court must assume that all material facts alleged in the complaint are true. *Davis v. Monroe City Bd. of Educ.*, 526 U.S. 629, 633 (1999). A court must view all facts and inferences in the light most favorable to the non-moving party and "may dismiss the complaint only if it is clear that no relief can be granted under any set of facts that could be proven consistent with the complaint." *McMorrow v. Little*, 109 F.3d 432, 434 (8th Cir. 1997); *see also Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 464 (8th Cir. 2002). Thus, as a practical matter, a dismissal under Rule 12(b)(6) should

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

be granted "only in the unusual case in which a plaintiff includes allegations that show, on the face of the complaint, that there is some insuperable bar to relief." ***Strand v. Diversified Collection Serv., Inc.***, 380 F.3d 316, 317 (8th Cir. 2004). The issue on a motion to dismiss is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of his or her claim. ***Rosenberg v. Crandell***, 56 F.3d 35, 37 (8th Cir. 1995).

Kforce argues that, because each of Plaintiffs' state law claims against Kforce relate to an ERISA-governed employee benefit plan, Plaintiffs' state law claims are preempted by ERISA and must be dismissed. In enacting the comprehensive ERISA statutory scheme, Congress expressly provided that ERISA preempts all state laws to the extent that they "relate to" an employee benefit plan under ERISA. 29 U.S.C. § 1144(a); ***Wilson v. Zoellner***, 114 F.3d 713, 716 (8th Cir. 1997). Importantly, "the express pre-emption provisions of ERISA are deliberately expansive." ***Pilot Life Ins. Co. v. Dedeaux***, 481 U.S. 41, 45 (1987). However,

> [n]ot all state law claims that somehow affect a plan are preempted. . . . Some actions involving ERISA plans are clearly of this sort: run-of-the-mill state-law claims such as unpaid rent, failure to pay creditors, or even torts committed by an ERISA plan . . . although obviously affecting and involving ERISA plans and their trustees, are not pre-empted by ERISA.

***Bannister v. Sorenson***, 103 F.3d 632, 635 (8th Cir. 1996) (internal quotation omitted).

A state law "relates to" an employee benefit plan if it: (1) expressly refers to an ERISA plan, or (2) has a connection with such a plan. ***See Cal. Div. of Labor Standards Enforcement v. Dillingham Const., N.A., Inc.***, 519 U.S. 316, 324 (1997); ***Wilson***, 114 F.3d at 716. As the Court has previously concluded, the first element is not applicable. ***See*** July 5, 2000 Mem. and Order, p. 4. Thus, Plaintiffs' claims are not preempted on the basis of any reference to any ERISA plan. The focus of the parties' disagreement is whether Plaintiffs' claims have a sufficient connection with an

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

ERISA plan. To determine whether a sufficient connection exists, a court must "look both to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive as well as to the nature of the effect of the state law on ERISA plans." ***Cal. Div. of Labor Standards Enforcement***, 519 U.S. at 325 (internal quotations and citation omitted). The Eighth Circuit has identified the following seven factors that should be considered:

> (1) whether the state law negates an ERISA plan provision, (2) whether the state law affects relations between primary ERISA entities, (3) whether the state law impacts the structure of ERISA plans, (4) whether the state law impacts the administration of ERISA plans, (5) whether the state law has an economic impact on ERISA plans, (6) whether preemption of the state law is consistent with other ERISA provisions, and (7) whether the state law is an exercise of traditional state power.

***Shea v. Esensten***, 208 F.3d 712, 718 (8th Cir. 2000) (quoting ***Ark. Blue Cross & Blue Shield v. St. Mary's Hosp., Inc.***, 947 F.2d 1341, 1344-45 (8th Cir.1991)). "While none of these factors is itself determinative, they serve to focus and clarify the court's analysis." ***Bannister***, 103 F.3d at 635 (internal quotation marks omitted).

1. *Factor 1: Whether the state law negates an ERISA plan provision*

Kforce argues that, if Plaintiffs are successful on their state law claims, Kforce, the plan sponsor, will be required to pay medical bills for which it has denied coverage in accordance with the Plan's coverage terms. According to Kforce, this effectively will permit state law to negate an ERISA plan provision. Contrary to Kforce's argument, the claims do not negate an ERISA plan provision. Plaintiffs are not suing for plan benefits nor do they seek the enforcement or expansion of any plan coverages. Plaintiffs sue Kforce for damages for the allegedly tortuous actions of its alleged agent, irrespective of any plan provision. ***See, e.g., Stewart v. Pershing Health Sys.***, 182 F. Supp. 2d 856, 861 (E.D. Mo. 2001). The fact that Kforce might be liable to pay any judgment

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

entered against it in this case does not necessarily lead to a conclusion that the state law impermissibly negates a Plan term.[2] *See Bannister*, 103 F.3d at 635. This factor weighs in favor of finding no preemption.

2. *Factors 2 & 3: Whether the state law affects relations between primary ERISA entities, and whether the state law impacts the structure of ERISA plans*

The Eighth Circuit's second and third factors are treated identically. *Ark. Blue Cross & Blue Shield*, 947 F.2d at 1346. Primary ERISA entities are the employer, the plan, the plan fiduciaries, and the beneficiaries. *Id.* Kforce argues that, as the Plan sponsor, it is one of the primary ERISA entities. According to Kforce, Plaintiffs' claims directly affect the relationship between it and Guardian, another ERISA entity. Kforce contends that allowing Plaintiffs' claims to go forward will allow statements by one ERISA entity to require payment of Plan benefits by another ERISA entity, even though coverage benefits were properly denied. Kforce argues that this impacts the Plan's structure and administration. The Court concludes that Plaintiffs' claims do not significantly affect relations between primary ERISA entities. Plaintiffs seek to hold Kforce liable for the tortuous acts of its agent, not for any breach of a fiduciary duty or for a failure to properly administer the Plan. *See Wilson*, 114 F.3d at 718. If Kforce does incur liability in this case, it will be "as the employer of a tortfeasor, and not as a plan fiduciary." *Id.* Consequently, Kforce "will not be liable in any way for its administration of the ERISA plan, but rather for the coincidental and unrelated conduct of its agent." *Id.* Because Kforce will not be subject to liability incurred due to its role as an ERISA entity, its relationship with other ERISA entities will not be affected by the suit. *Id*. Accordingly, a recovery by Plaintiffs against Kforce would not impact the structure of the Plan or affect relations between

[2]Further, the claim for damages against Kforce is not simply for the amount of benefits that could have been paid under the Plan.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

primary ERISA entities. This factor weighs in favor of finding no preemption.

3. *Factor 4: Whether the state law impacts the administration of ERISA plans*

Notwithstanding Kforce's arguments to the contrary, Plaintiffs' claims do not impact the administration of the Plan. A recovery by Plaintiffs would not impose a future duty on Kforce to respond to inquiries from third-party health care providers. *See In Home Health, Inc.*, 101 F.3d at 606 (allowing plaintiff to proceed with claim for negligent misrepresentation does not impose any additional administrative duties or require a change in administrative procedures). Therefore, Plaintiffs' claims have little or no impact on plan administration, and this factor weighs in favor of finding no preemption.

4. *Factor 5: Whether the state law has an economic impact on ERISA plans*

Kforce states that the Plan is a "self-insured" plan, which means that, if Ms. Feverston had been covered by the plan, Kforce itself would have been responsible for payment of the medical expenses. According to Kforce, a recovery by Plaintiff would have a direct economic impact on the Plan because Kforce, the Plan sponsor, would be required to pay benefits that were properly denied under the Plan. Plaintiffs acknowledge that their claims, if successful, would have a direct economic impact on Kforce, but point out that the economic impact would not impact the Plan itself. The Court concludes that, while Plaintiffs' point is well-taken, it is nonetheless true that the economic impact on Kforce resulting from a judgment in Plaintiffs' favor could result in some negative economic impact on the Plan. Thus, this factor weighs slightly in favor of finding preemption.

5. *Factor 6: Whether preemption of the state law is consistent with other ERISA provisions*

Kforce argues that to permit Plaintiffs' claims to proceed would allow causes of action which

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

are outside of, and inconsistent with, ERISA to be asserted against ERISA plans. The Court finds this argument unpersuasive. As the Court previously concluded, the Eighth Circuit has noted that "'[i]f providers have no recourse under ERISA or state law in situations . . . where there is no coverage . . . but a provider has relied on assurances that there is such coverage, providers will be understandably reluctant to accept the risk of non-payment and may require up-front payment by beneficiaries – or impose other inconveniences – before treatment is offered. This does not serve, but rather directly defeats, the purpose of Congress in enacting ERISA.'" *In Home Health, Inc.*, 101 F.3d at 606-07 (quoting *Mem'l Hosp. Sys. v. Northbrook Life Ins. Co.,* 904 F.2d 236, 247-48 (5th Cir. 1990)). *See* July 5, 2000 Mem. and Order, p. 7. Thus, this factor weighs in favor of finding no preemption.

      6.      *Factor 7: Whether the state law is an exercise of traditional state power*

As the Court previously noted, "Missouri exercises a traditional state power in adjudicating claims of negligent misrepresentation in its courts." *Stewart*, 182 F. Supp. 2d at 862-63 (internal quotation marks and citations omitted). *See* July 5, 2000 Mem. and Order, pp. 7-8. Likewise, Missouri courts have long recognized their ability to provide relief in cases involving promissory estoppel. Therefore, there is no doubt that the adjudication of Plaintiff's claims is an exercise of traditional state power. This factor weighs in favor of finding no preemption.

Thus, as the Court concluded in its July 5, 2005 Order,[3] Plaintiffs' claims are not preempted by ERISA. While it is true that recovery against Kforce could have some slight economic impact on

---

[3]In the Court's July 5, 2005 Order, the Court relied upon several cases which Kforce argues are distinguishable because the employer or plan sponsor was not a defendant in those cases. While Kforce's argument in this regard is well-taken, the Court believes that the previously cited cases nonetheless provide instruction with regard to the instant case.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

the Plan, the remaining six factors weigh in favor of finding no preemption. Thus, the Court concludes that the claims do not have a sufficient "connection with" an ERISA plan to be preempted by ERISA. Therefore, Plaintiffs' claims against Kforce will not be dismissed on that basis.[4]

B. Motion for Summary Judgment

Kforce moves for summary judgment with respect to Counts Four, Five, and Six pursuant to Federal Rule of Civil Procedure 56, arguing that it is entitled to judgment as a matter of law with respect to all three counts. Specifically, Kforce argues that: (1) these claims are barred by the statute of limitations; and (2) the statements upon which Plaintiffs allegedly detrimentally relied did not include any representations of coverage.

Kforce contends that it is entitled to judgment as a matter of law because Plaintiffs failed to file suit against it within the period of time proscribed by Missouri law. The statute of limitations in Missouri for tort actions mandates that a civil action be commenced within five years from the date the cause of action accrues. Mo. Rev. Stat. § 516.120. A cause of action is deemed to accrue when the damage is sustained and is "capable of ascertainment." Mo. Rev. Stat. § 516.100; *Knipmeyer v. Spirtas*, 750 S.W.2d 489, 490 (Mo. Ct. App. 1988) (statute of limitations begins to run once the fact of damage is capable of ascertainment even though amount of damage not yet ascertainable).

[4]Because the Court has found that Plaintiffs' claims against Kforce are not preempted, the Court has jurisdiction over this matter and may proceed to consider Kforce's remaining arguments, including the arguments presented in its alternative Motion for Summary Judgment. As is more fully explained in Part II.B., Kforce is entitled to judgment as a matter of law with respect to all of Plaintiffs' claims against it. Because the claims against Kforce will be dismissed for the reasons explained in Part II.B., the Court need not consider the merits of Kforce's two other arguments in support of its contention that this matter is subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). Unlike Kforce's preemption argument, both of these other arguments concern the sufficiency of the allegations made in the Complaint and have no bearing on this Court's jurisdiction over this matter.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Kforce argues that Plaintiffs' claims against it accrued more than five years before they filed suit against Kforce because damage was sustained and capable of ascertainment no later than September 26, 2000. Kforce presents a variety of evidence in support of its contention that, no later than September 26, 2000, the Hospital had reason to ascertain, and in fact did ascertain, that Guardian was refusing to pay Ms. Feverston's medical bills. First, as evidence that the Hospital knew Guardian was refusing to pay Ms. Feverston's bill, Kforce presents the Hospital billing log for Ms. Feverston's account. *See* Kforce's Ex. 10. On August 18, 2000, Ms. Feverston's billing status was changed to "SELFPAY $579494.05." *Id.* at THL 2407. She was classified several times thereafter as "SELFPAY." *Id.* at THL 2407-09. Second, as evidence that the Hospital had reason to know that Guardian was refusing to pay, Kforce presents evidence that Guardian sent the Hospital a "Provider Notification," dated August 28, 2000, which indicated that the charges incurred would not be paid because the "charges [were] incurred after the member's termination date."[5] Kforce's Ex. 1, p. 1. The Provider Notification also stated that the "group health insurance plan does not provide benefits for charges incurred after termination of insurance coverage." *Id.* at 2. Third, Kforce presents evidence that Guardian sent the Hospital another Provider Notification, dated September 15, 2000, which again indicated that the charges incurred would not be paid because the "charges [were] incurred after the member's termination date." Kforce's Ex. 5, p. 1. This second notice also indicated that the "group health insurance plan does not provide benefits for charges incurred after termination of insurance coverage." *Id.* at 2. This document is date-stamped "Sep 26 2000."[6] Thus,

---

[5]According to Kforce, Ms. Feverston's coverage claim was denied because, on the date of the accident, she was not employed by Kforce and therefore did not have health insurance through the Plan. Kforce's Stmt. of Uncont. Mat. Facts, ¶ 4, 5.

[6]The August 28, 2000 Provider Notification does not contain a date stamp.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Kforce contends that the Hospital was aware, at least by September 26, 2000, that Guardian would not pay the invoiced charges. Kforce argues that the fact of the Hospital's alleged damage was sustained and capable of ascertainment no later than this date.

Plaintiffs make several arguments in response to Kforce's contention that Plaintiffs' claims are barred by the statute of limitations, only one of which is relevant to the Court's analysis.[7] Plaintiffs argue that there is a genuine issue of fact regarding when the August and September Provider Notifications were received by the Hospital. In support of this contention and in an effort to contradict the evidence presented by Kforce, the sole piece of evidence Plaintiffs point to is Kforce's Exhibit 10, the Hospital's billing log for Ms. Fervertson's account. According to Plaintiffs, the billing log indicates that the August and September Provider Notifications were not logged until

---

[7]In addition to the argument discussed in this section, Plaintiffs also make two other arguments, both of which are without merit. First, Plaintiffs argue that their claims against Kforce did not accrue until May 1, 2001, when Guardian completed its ERISA administrative review process. This is clearly not the case. Plaintiffs' claims against Kforce are not based on ERISA, but are instead based on Missouri common law. Plaintiffs themselves repeatedly argue that their claims are based on Guardian's tortuous actions and are not based on recovery of Plan benefits. Thus, the date Guardian completed its administrative review process of the denial of ***Ms. Feverston's*** ERISA coverage claim has no bearing on when ***Plaintiffs'*** tort claims against Kforce accrued. Plaintiffs cannot invoke the benefits of contract theory in an attempt to escape their statute of limitations problem.

Second, Plaintiffs argue that Guardian's initial claim denials are "insufficient to permit a party to ascertain that damages have been suffered" because insurance companies often refuse payment only to later change course and agree to cover charges previously denied. Pls' Mem. in Opp., p. 36. Plaintiffs presumably are referring to the August and September Provider Notifications and are arguing that these documents were not adequate indications of Guardian's refusal to pay. In analyzing the statute of limitations issue, the question is whether the Provider Notifications permitted the Hospital to ascertain that Guardian was refusing to pay Ms. Feverston's medical bill. The August and September Provider Notifications clearly state that coverage is being denied and the reason for the denial. This gave the Hospital sufficient notice and permitted it to ascertain that Guardian was refusing to pay, thereby causing the damage of which Plaintiffs now complain. Plaintiffs offer no evidence or authority which contradicts this conclusion.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

September 28, 2000. Plaintiffs argue that this demonstrates that the Hospital was unaware that Guardian was refusing to pay Ms. Feverston's medical bill until September 28, 2000. Plaintiffs also state that the billing log shows that Guardian continued to request information about the accident even after it denied coverage. Kforce responds that, aside from the fact that it is illogical to conclude that the Hospital would not have received the August 28, 2000 Provider Notification well before September 28, 2000,[8] there is no dispute that the September 15, 2000 Provider Notification bears a date-stamp of September 26, 2000. Kforce points out that Plaintiffs have provided no evidence that the September 15, 2000 Provider Notification was not ***received*** by the Hospital on this date (regardless of when it might have been logged), as evidenced by the date-stamp.

A cause of action is deemed to accrue when the damage is sustained and is "capable of ascertainment." Mo. Rev. Stat. § 516.100. Kforce has presented undisputed evidence that the Hospital received notice that Guardian would not pay Ms. Feverston's medical bill at least as early as September 26, 2000. Indeed, for purposes of this Motion for Summary Judgment, Plaintiffs have specifically admitted that "[t]he hospital explicitly acknowledged receipt of Guardian's denial of benefits when it date-stamped a provider notice 'September 26, 2000.' That notice, dated September 15, 2000, stated 'benefits are not payable' because the charges were 'incurred after the member's termination date.'" Kforce's Stmt. of Uncon. Mat. Facts, ¶ 9. ***See also*** Pls' Res. to Kforce's Stmt. of Uncon. Mat. Facts, ¶ 9 ("No dispute of material fact."). At least as early as September 26, 2000,

---

[8]Kforce points out that the Hospital changed Ms. Feverston's payor status to "SELFPAY" in mid-August and that several other Provider Notifications sent by Guardian were received and processed by the Hospital within two weeks of the date on the document. ***See*** Kforce's Ex. 5 (dated September 15, 2000 and date-stamped September 26, 2000); Kforce's Ex. 6 (dated September 22, 2000 and date-stamped October 3, 2000); Kforce's Ex. 7 (dated October 3, 2000 and date-stamped October 16, 2000).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

the Hospital was capable of ascertaining that Guardian would not pay Ms. Feverston's bill and that it was damaged by that refusal.[9] Plaintiffs' reliance on the Hospital billing log's indication that the September 15, 2000 Provider Notification was not ***logged*** in the Hospital's records until September 28, 2000 does not contradict the evidence presented by Kforce that the September 15, 2000 Provider Notification was ***received*** by the Hospital on September 26, 2000. Thus, there is no issue as to any genuine fact regarding when the September 15, 2000 Provider Notification was received by the Hospital. Kforce has presented evidence that the Hospital was capable of ascertaining its claims against Kforce in August of 2000 and that such claims were ascertainable at least no later than September 26, 2000.[10] Because the Complaint against Kforce was not filed until September 27, 2005, Plaintiffs' claims against Kforce are barred by the applicable five-year statute of limitations. Therefore, Kforce is entitled to judgment as a matter of law as to all of Plaintiffs' claims against it.[11]

## III. CONCLUSION

Although Plaintiffs' claims against Kforce are not preempted by ERISA, the claims nonetheless must be dismissed because they were filed more than five years after Plaintiffs' cause of action against Kforce accrued. Therefore, Kforce is entitled to judgment as a matter of law with respect to Counts Four, Five, and Six, and those counts will be dismissed.

---

[9]Moreover, contrary to Plaintiffs' assertion, this is true regardless of what other actions might have taken place after this point in time.

[10]Plaintiffs make no effort to contradict Kforce's evidence that Ms. Feverston's payor status was changed to "SELFPAY" in August 2000.

[11]Kforce also argues that it is entitled to judgment as a matter of law because the statements upon which Plaintiffs allegedly detrimentally relied did not include any representations of Plan coverage. Because the Court has already determined that Plaintiffs' claims against Kforce are barred by the statute of limitations, it need not reach this argument.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Kforce Inc.'s Motion to Dismiss and for Summary Judgment [doc. #31] is **GRANTED**. Defendant Kforce, Inc. shall have judgment as a matter of law with respect to Counts Four, Five, and Six.

An appropriate Order of Judgment shall accompany this Order.

So Ordered this 31st day of May, 2006.

E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE

PDF created with FinePrint pdfFactory trial version www.pdffactory.com